IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CALEB CRABTREE and ADRIANE
CRABTREE as assignees of the
claims of Casey Cotton                                                    PLAINTIFFS

v.                                                            CAUSE NO. 1:22cv348-LG-BWR

ALLSTATE PROPERTY AND
CASUALTY INSURANCE
COMPANY and JOHN DOES #1-5                                         DEFENDANTS

MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS

**BEFORE THE COURT** are the [8] Motion to Dismiss for Failure to State a Claim and the [10] Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the alternative, for Summary Judgment, filed by Defendant Allstate Property and Casualty Insurance Company. Plaintiffs Caleb and Adriane Crabtree filed responses in opposition to the Motions. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that Allstate's Motion to Dismiss for Lack of Subject Matter Jurisdiction should be granted. Allstate's Motion to Dismiss for Failure to State a Claim is moot.

BACKGROUND

Caleb Crabtree was seriously injured in a motor vehicle accident in which his 2008 Toyota Yaris was rear-ended by a 2012 Ford F-250 truck driven by Casey Cotton. At the time of the accident, Cotton's truck was insured by an automobile liability insurance policy issued by Defendant Allstate. Caleb and his wife Adriane retained counsel who quickly demanded payment of the $25,000 policy limits and

notified Allstate that Caleb's injuries far exceeded the policy limits, but Allstate refused to settle the claim. The Crabtrees claim that Allstate's failure to timely settle their claim against Cotton constituted bad faith. They further allege that Allstate acted in bad faith by failing to notify Cotton about the settlement negotiations, his potential excess exposure, and his right to independent counsel.

The Crabtrees filed a lawsuit against Cotton and Allstate in the Circuit Court of Lamar County, Mississippi, on December 10, 2018. Allstate removed the case to this Court, and it was assigned cause number 2:19cv7-KS-MTP. The Crabtrees' claims against Cotton were severed and remanded to state court, and the Crabtrees voluntarily dismissed their claims against Allstate. Cotton filed bankruptcy twice in the Bankruptcy Court of the Southern District of Mississippi while that lawsuit was pending. Cotton's bad faith claim against Allstate was assigned to the Bankruptcy Trustee on October 4, 2021, and "[t]he Bankruptcy Court directed that the suit in Lamar County Circuit Court against Cotton be liquidated by proceeding to jury trial to obtain a judgment in order to pursue the claims against Allstate for any resulting excess judgment and other damages." (Compl. at 10, Cause No. 1:22cv348-LG-BWR, ECF No. 1). The Crabtrees' claims against Cotton then proceeded to trial, and a jury awarded them $4,605,000.

The Crabtrees claim that they

> had to obtain financing from some collateral source to purchase the Cotton claims against Allstate. [The] Crabtrees designated Court Properties, LLC[,] to be the assignee of the claim for them. Once the settlement was approved by the bankruptcy court, Cotton and the Trustee executed an assignment to Court Properties and then Court Properties then executed the assignment back to [the] Crabtrees. . . .

-2-

> On September 8, 2022, to clarify any confusion or issue as to the assignment, Court Properties executed an Amended Assignment to the Crabtrees.

(*Id.* at 10-11) (internal citations omitted).  The purported assignment to the Crabtrees provides:

> FOR VALUE RECEIVED in connection with Lender's assignment attached hereto as Exhibit A, Caleb Crabtree, and Adriane Crabtree ("Borrowers") promise to pay Court Properties, Inc. ("Lender") the sum of Ten Thousand Dollars ($10,000.00), with interest at 8% per annum upon the following terms and conditions, due upon payment by Allstate on the Cotton Claim:
> 1.  Payment is contingent upon said payment of a sum in excess of $100,000 by Allstate on the "Cotton Claim" as defined in the assignment to which this note is attached.
> 2.  Payment shall be due, if at all, within fourteen (14) days after the aforesaid payment by Allstate.
> Borrowers agrees [sic] to remain fully bound until the note shall be fully paid and further waive demand, presentment and protest.

(Def.'s Mot., Ex. 2 to Ex. 2, ECF No. 10-2).

After the purported assignments, the Crabtrees filed their second lawsuit, which was styled *Crabtree v. Allstate, et al.*, 1:21cv399-TBM-BWR (hereafter referred to as "*Crabtree II*"), on December 17, 2021.  They attempted to assert Cotton's bad faith claims against Allstate.  On December 19, 2022, United States District Judge Taylor B. McNeel dismissed the lawsuit for lack of standing, holding that "[t]he assignment was null because the Crabtrees were assigned the claims by a third party before the third party had received them from Cotton." (Mem. Op. & Order at 1, Cause No. 1:21cv399-TBM-BWR, ECF No. 151).  Judge McNeel therefore did not reach the issues presently before this Court.  On January 16, 2023,

the Crabtrees filed a Motion to Alter Judgment, which was denied by Judge McNeel on June 29, 2023.

On December 22, 2022, before filing the Motion to Alter Judgment in *Crabtree II*, the Crabtrees filed the instant lawsuit. They claim that Allstate breached numerous duties it owed to Cotton, which caused him to declare bankruptcy, incur attorney's fees, endure years of emotional distress and financial difficulties. (*Id.* at 22). Allstate filed two Motions to Dismiss. This lawsuit and the pending Motions were stayed while the parties awaited a ruling on the Motion to Alter Judgment in *Crabtree II*. Now that the stay has been lifted, the parties have finished briefing the Motions to Dismiss.

## DISCUSSION

Allstate argues, "Because the Crabtrees have no direct rights against Allstate, they could only have standing if the assignment from Cotton was valid." (Def.'s Mem. at 7, ECF No. 11). It further asserts that the initial assignment of Cotton's claim to Court Properties was illegal and void under Mississippi's champerty and maintenance statutes. *See Smith v. Simon*, 224 So. 2d 565, 566 (Miss. 1969) (affirming the court's "duty and the power to declare void and unenforceable contracts made in violation of law or in contravention of the public policy of the state"). Therefore, Allstate claims that Court Properties was not capable of assigning Cotton's claim to the Crabtrees, leaving them without standing to pursue this lawsuit and this Court without subject matter jurisdiction.

The Fifth Circuit has explained:

> Unlike a Rule 12(b)(6) motion which is confined to evaluating the pleadings, a 12(b)(1) factual attack on the court's subject matter jurisdiction may be based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. When a defendant makes a factual attack, the plaintiff has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction.

*Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (internal citations and quotation marks omitted). A plaintiff's standing to pursue a lawsuit implicates a court's subject matter jurisdiction because Article III of the Constitution solely permits Courts to adjudicate actual, ongoing controversies. *Shemwell v. City of McKinney, Tex.*, 63 F.4th 480, 483 (5th Cir. 2023). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* Standing pertains to "whether the requisite interest exists at the outset . . ." of the litigation. *Id.*

The terms "champerty" and "maintenance" have often been used interchangeably by courts. *Sneed v. Ford Motor Co.*, 735 So. 2d 306, 309 (Miss. 1999). "Champerty" is generally defined "as a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds . . . ." *Id.* (quoting Black's Law Dictionary 157 (6th ed. 1990)). "Perhaps the best, because it is the most flexible, definition of maintenance is that it is an officious intermeddling in a suit which in no way

belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it . . . ." *Id.* (quoting *State ex rel. Carr v. Cabana Terrace, Inc.*, 153 So. 2d 257, 259 (Miss. 1963)). Champerty and maintenance are forbidden in Mississippi in the following circumstances:

> It shall be unlawful for any person, firm, partnership, corporation, group, organization, or association, either incorporated or unincorporated from this state or any other state, either before or after proceedings commenced: . . . (c) to solicit, request, or donate, any money, bank note, bank check, chose in action, personal services, or any other personal or real property, or any other thing of value, or any other assistance as an inducement to any person to commence or to prosecute further, or for the purpose of assisting such person to commence or prosecute further, any proceeding in any court . . . .

Miss. Code. Ann. § 97-9-11. This statute is not "intended to be in derogation of the constitutional right of real parties in interest to employ counsel, or to prosecute any available legal remedy." Miss. Code. Ann. § 97-9-23.

Allstate argues that Cotton's assignment of his bad faith claim to Court Properties, Inc., violated Mississippi's champerty statute based on the affidavit of Court Properties' director, secretary, and president, Mark A. Gibson. Mr. Gibson testified that he learned of the problems the Crabtrees suffered as a result of the motor vehicle accident through a mutual friend, and his intent was to help the Crabtrees "by funding the purchase of the assignment in the Bankruptcy Court so that they could, hopefully, recover the damages due to them from the crash." (Def.'s Mot., Ex. 2 at 2, ECF No. 10-2). Allstate therefore asserts that "there is no intimation . . . that Gibson knew the Crabtrees before July 2021 or was otherwise

-6-

connected to the Crabtrees, to Cotton, or to this case." (Def.'s Mem. at 4, ECF No. 11).

The Crabtrees advocate for adoption of the following definition of "champerty":

> the act of one 1) improperly, and 2) for the purpose of stirring up litigation and strife, 3) encouraging others either to bring actions or to make defenses which they have no right to make, and the term seems to be confined to the *intermeddling* in a suit of a stranger or of one not having any privity or concern in the subject matter, or standing in no relation of duty to the suitor.

(Pls.' Resp. Mem. at 11, ECF No. 19).[1]  They place particular emphasis on the requirement of "stirring up litigation and strife" in their memorandum.  *See id.* at 11-13.  However, neither the Mississippi Legislature nor the Mississippi Supreme Court have adopted this particular requirement, and the Crabtrees concede that, generally, "maintenance is the unlawful upholding of the suit of a stranger, and champerty is maintenance, including an agreement to divide the proceeds of the suit."  (*Id.*)

Allstate has demonstrated through the uncontradicted affidavit of Mr. Gibson, that Court Properties, Inc., was a "stranger" with no prior interest in the dispute between Cotton and Allstate, and Court Properties agreed to be paid from the proceeds from any recovery that the Crabtrees received from Allstate.  Court Properties' payment of $10,000 to obtain Cotton's cause of action against Allstate

---

[1] The Crabtrees appear to cite 10 Am. Jur. Champerty and Maintenance § 1 for this definition.  A more recent discussion of champerty and maintenance can be found at 14 Am. Jur. 2d Champerty, Maintenance, and Barratry § 1. However, this Court is bound by the language of Miss. Code Ann. § 97-9-11, not secondary sources.

and its subsequent transfer of the claim to the Crabtrees in exchange for a promissory note was, as Mississippi's champerty statute requires, "for the purpose of assisting [the Crabtrees] to commence" their lawsuit against Allstate. *See* Miss. Code. Ann. § 97-9-11. The assignment also did not fall within the exception to the champerty statute because Court Properties was not a "real party in interest." *See* Miss. Code Ann. § 97-9-23.

The Crabtrees next argue that Mississippi's statutes permitting assignments, Miss. Code Ann. § 11-7-3 and § 11-7-7, "override" the champerty statute and "expressly permit the assignments at issue." (Pls.' Mem. at 19, ECF No. 19). In *Sneed v. Ford Motor Co.*, the Mississippi Supreme Court rejected this assertion, holding that assignments must "not only satisfy the requirements of the assignment statute, but the assignment must also avoid champerty." 735 So. 2d at 311. Therefore, the Crabtrees' argument is not well taken.

Finally, the Crabtrees claim that Allstate may not assert champerty as a defense in this lawsuit. In *Sneed*, the rollover of a Ford Bronco seriously injured its passengers. *Id.* at 307. The vehicle's insurers paid their policy limits of $500,000 to the passengers. *Id.* The passengers and insurers also entered into an agreement that provided that the passengers would sue Ford Motor Company. *Id.* The insurers would pay all expenses incurred by the passengers in pursuing the lawsuit, and upon recovery of damages by the passengers, the insurers would be reimbursed pursuant to a procedure and formula agreed upon by the parties. *Id.* at 307-08. The *Sneed* court rejected Ford's defense of champerty because the passengers "did

not bring their action due to the inducement by or assistance from the insurers." *Id.* at 314. The passengers already had "a lawful remedy against Ford," the manufacturer of the allegedly defective vehicle in which they were traveling at the time of the accident. *Id.*

The *Sneed* court further found that "whether or not the subject agreement is champertous is not a defense to Ford." *Id.* at 314. In support of this finding, the court explained:

> . . . the fact that there is a champertous contract in relation to the prosecution of the suit between plaintiff and his attorney, or between plaintiff and another layman, in no wise affects the obligation of defendant to plaintiff. It is the champertous contract and not the right of action itself which the contract avoids, and, therefore, defendant cannot avail himself of the champertous agreement as a defense to the action. . . . If we had determined the agreement at issue to be champertous, then it would have been a void contract under the laws of the State of Mississippi. But that would not have had any bearing on the rights of the Plaintiffs to continue the prosecution of their action.

*Id.* at 314-15 (internal citations omitted).

The present case is distinguishable. The passengers in *Sneed* had a right of action against Ford that was not dependent on the void assignment. *See id.* Under Mississippi law, the Crabtrees do not have an independent right of action against Cotton's insurer, Allstate. *See Myers v. Miss. Farm Bureau Mut. Ins. Co.*, 749 So. 2d 1173, 1174 (Miss. Ct. App. 1999) (holding that a third-party to an insurance policy cannot maintain a bad faith claim against the insurer); Jeffrey Jackson, Miss. Ins. Law and Prac. § 13:16 ("The doctrine of bad faith does not create a direct action against insurers by third parties."). The Crabtrees' purported standing to pursue

this lawsuit is solely based on the void assignment of Cotton's claims to Court Properties, which Court Properties attempted to subsequently assign to the Crabtrees. As a result, the defense of champerty is available to Allstate in this lawsuit.

Since Allstate has demonstrated that a party with no interest in this litigation, Court Properties, assisted the Crabtrees in pursuing this lawsuit in exchange for a share of any recovery against Allstate, the assignment of Cotton's claims to Court Properties and the subsequent assignment of the claims from Court Properties to the Crabtrees are void under Mississippi law. The Crabtrees do not otherwise have standing to assert this lawsuit. Therefore, the lawsuit must be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

The Court is aware of the Crabtrees' dilemma and understands the situation that led them to attempt to obtain a recovery by means of assignment. However, this Court cannot ignore the language of Mississippi's champerty and maintenance statute to permit the Crabtrees' claims against Allstate to proceed. Under Mississippi law a party with no interest in a lawsuit is not permitted to purchase a claim to assist another in pursuing that claim in exchange for payment from the proceeds of the lawsuit. Since the Crabtrees' standing was solely based on such an arrangement, the Court does not have subject matter jurisdiction. Allstate's separate [8] Motion, which seeks dismissal due to the expiration of the statute of

limitations and the Crabtrees' alleged failure to state a claim upon which relief can be granted, is moot.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [10] Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the alternative, for Summary Judgment, filed by Defendant Allstate Property and Casualty Insurance Company is **GRANTED**. This lawsuit is **DISMISSED FOR LACK OF JURISDICTION**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [8] Motion to Dismiss for Failure to State a Claim filed by Defendant Allstate Property and Casualty Insurance Company is **MOOT**.

**SO ORDERED AND ADJUDGED** this the 27th day of September, 2023.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE